IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

THOMAS P. COX,
    Plaintiff,

v.                                                      Civil Case No. 3:14-cv-377-JAG

MAG MUTUAL INSURANCE COMPANY, *et al.*,
    Defendants.

## OPINION

Thomas Cox, an insurance salesman, brings this suit because he thinks an insurance agency teamed up with an insurance carrier to steal some of his customers. Unfortunately, his factual allegations do not go beyond the speculative, so the Court must dismiss his case. Cox tries to state claims of conspiracy and tortious interference with his contract and with his business expectancies, but his complaint lacks any allegations that push his claim from guesswork to a plausible claim. Consequently, the Court GRANTS the defendants' motions to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6).

### I. Facts

Beside the plaintiff, this case contains three major characters: (1) MAG Mutual Insurance Company, an insurance carrier that provides medical malpractice insurance; (2) Riggs, Counselman, Michaels & Downes, Inc. ("RCMD"), an insurance agency that sells MAG insurance; and (3) Charles Lunsford Sons & Associates, another insurance agency that sells various brands of insurance in the medical field.

From 2005 until 2009, Cox worked for RCMD as a salesman. By his account, he built a number of customer relationships, and sold a great deal of MAG insurance. In 2009, RCMD

fired Cox, who consequently could no longer sell MAG products.[1] Three years later, in 2012, the pendulum swung the opposite way, and MAG representatives met with Cox to discuss his reappointment as a MAG insurance agent. During these discussions, Cox gave MAG twelve letters or emails of recommendation from current or former Cox customers, ten of them current or former MAG customers, asking MAG to give Cox an appointment.

On February 1, 2013, MAG appointed Lunsford, Cox's then-current employer, as an authorized MAG agency. MAG and Lunsford signed a producer agreement giving MAG the right to "modify commission rates on 30 days prior written notice." The agreement allowed either party to terminate the agreement at will. Through Lunsford, Cox could now again sell MAG products.

The producer agreement also dealt with the concept of "agent of record." The agent of record services the policy and receives commissions when the policy renews. Typically, the insured picks his agent of record when he buys the policy, but sometimes customers later decide to change agents of record. The producer agreement recognized that agent-switching could occur, and said "changes in the agent-of-record for an insured will be recognized by the insurer at its sole discretion in accordance with its then-current policies, practices or procedures – or where applicable – as governed by state law or regulations." (Dk. No. 1-14 at ¶ 20.)

Almost as soon as he started to sell MAG policies through Lunsford, Cox procured letters from several of his old customers asking MAG to recognize Lunsford and Cox as agent of

---

[1] Apparently, before working for RCMD, Cox had his own agency, PhilipsCox, which handled the MAG line of insurance. In 2005, RCMD acquired PhilipsCox, and Cox became a RCMD employee. Although not relevant to this case, Cox then sued RCMD for defamation after his termination. *Cox v. Riggs, Counselman, Michaels & Downes, Inc.*, CL 09-4824 (Va. Cir. Ct. 2009). The parties settled and the court dismissed the case in November 2012. Cox then filed for sanctions against RCMD's counsel. The Court dismissed Cox's motion, but granted sanctions against Cox. *Cox v. Riggs, Counselman, Michaels & Downes, Inc.*, Case No. CL 13-3932 (Va. Cir. Ct. 2013). The pending case in this Court is yet another skirmish in this litigious war.

2

record, replacing RCMD. As one might expect, MAG wanted to encourage its agents to find new customers, rather than just going through the paperwork of changing agents. MAG told Lunsford that it planned to decrease the commissions on customers Lunsford secured by change of agent. Specifically, MAG planned to pay a 3 percent commission on customers who simply changed agents of record, rather than the usual 9 percent commission on all premiums. Although Cox had lined up several other customers to switch agents, at MAG's suggestion, he did not send in the paperwork. MAG did, however, suggest that Cox get two other customers—outside RCMD's area—to change agents of record.

During February 2013, the same period that Cox and MAG were working out the deal for him to become a MAG agent, Cox received some news about RCMD. Cox heard from MAG that RCMD was "livid to learn that Cox now had a MAG appointment." (Dk. No. 1-14 at ¶ 25.) At this time, Cox heard, for the first time, that MAG would change the commissions on premiums involving only a change of agent of record.

On April 29, 2013, Pratt Medical Center ("Pratt"), a MAG insured, delivered an agent of record letter to MAG changing its agent from RCMD to Cox. MAG honored the letter, even though Cox had not signed it (as generally required). On May 9 and 10, 2013, Cox attended a new producer meeting in Atlanta where Ed Lynch, the Senior Vice President of Business Development for MAG, told Cox not to send MAG any more change of agent letters. Cox received several change of agent letters, but chose not to sign them because of MAG's directions. Cox believes RCMD was behind Lynch's instructions, but makes no specific factual averments supporting this belief.

Pratt was a major customer of MAG insurance. After delivering the change of agent letter, Pratt decided to move coverage to a competitor. In June 2013, in an effort to win back the

3

business, an RCMD representative, John McElroy, met with Pratt's CEO, and offered to reduce the premiums. RCMD's efforts failed and MAG did not win back Pratt's business. In the same month, MAG informed Lunsford the producer agreement would be canceled. And in July 2013, Cox ceased to be a MAG salesman.

## II. Discussion[2]

Cox asserts two counts in his complaint: (1) civil conspiracy and (2) tortious interference.[3] In Count One, Cox argues that sometime between February and May 2013, MAG and RCMD "combined, associated, agreed or acted in concert for the purposes of willfully injuring Cox in his business and property, for the purpose of tortiously interfering with Cox's appointment with MAG and for the purpose of tortiously interfering with Cox's legitimate business expectancies." Cox alleges the parties' actions constitute a conspiracy in violation of the Virginia business conspiracy statute, Virginia Code § 18.2-499, and common law.

Both the statutory and common law conspiracy claims fail. The business conspiracy statute requires the alleged injury to be to a business or a business owner, not to an individual's

---

[2] "[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In construing a motion to dismiss, a court must take as true the facts, though not the legal conclusions, alleged in a plaintiff's complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). A complaint should survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim only when a plaintiff has set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[3] The Court also notes the discussion of an aiding and abetting claim. The Court cannot see where Cox alleges a separate aiding and abetting claim. The only mention of aiding and abetting in the amended complaint falls under Count II, where Cox states "among the improper methods used by RCMD were . . . aiding and abetting a violation of Virginia law." But then in Cox's response, he alleges "the timing of the events leading up to the May 9, 2014 meeting in Atlanta between Lynch and Plaintiff and the precipitous termination of the Lunsford contract and Plaintiff's appointment thereafter supports Plaintiff's claim that RCMD is liable as an aider and abetter." (Dk. No. 13. at 17-18.) The Court finds the plaintiff fails to state a separate claim for aiding and abetting; essentially, this is another way to say the parties conspired. To the extent that it is discussed as an improper method to support the tortious interference claim, the Court need not reach the issue because the tortious interference claim fails for other reasons.

employment interests. Cox's common law conspiracy claim fails because he fails to state a claim for tortious interference, the underlying tort to support his conspiracy claim. The conspiracy claim must also fail because the amended complaint provides nothing more than conclusory labels and legal conclusions.

In Count Two, Cox asserts RCMD tortiously interfered with Cox's property rights and business expectancies, including the right to obtain AOR letters, by causing MAG to fail to honor AOR letters and, ultimately, to cancel the MAG/Lunsford contract and Cox's employment. Because Cox fails to allege a valid business expectancy, he cannot successfully allege tortious interference. Cox's allegations against RCMD for tortious interference with a contractual relationship also fail because the amended complaint contains only conclusory allegations regarding RCMD's interference with the contracts at issue.

Though unclear in the amended complaint, Cox apparently asserts tortious interference claims against MAG. These claims fail because a party cannot interfere with its own contract, and, thus, MAG cannot be liable for tortious interference with either the MAG/Lunsford contract or the Cox/MAG contract. Additionally, any tortious interference with a business expectancy claim fails because Cox's amended complaint fails to allege the existence of a valid business expectancy.

### A. Tortious Interference Claims

#### *1. Tortious Interference with Contract*[4]

The complaint clearly attempts to state a claim of tortious interference with business expectancies, but leaves some doubt whether the plaintiff claims tortious interference with contract. For purposes of the motion to dismiss, the Court will treat the complaint as attempting

---

[4] In the interest of clarity, the Court will discuss Cox's tortious interference claim first because the conspiracy claim rests on the allegation of tortious interference.

to state a claim of intentional interference with two contracts: Lunsford's appointment as a MAG insurance agency,[5] and Cox's authorization by MAG to sell its insurance.[6]

To state a claim for tortious interference with a contract, the plaintiff must allege: (1) a valid contractual relationship; (2) knowledge of relationship by defendant; (3) intentional interference inducing or causing breach of contractual relationship; and (4) resulting damage to relationship. *Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 210 (4th Cir. 2001) (citing *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985)).

This case, however, pertains to contracts at will, and ordinarily Virginia law "provides no protection from the mere intentional interference with a contract terminable at will." *Frank Brunckhorst Co., LLC v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 463 (E.D. Va. 2008) (citing *Duggin v. Adams*, 234 Va. 221, 227, 360 S.E.2d 832, 836 (1987)). Consequently, when a contract is terminable at will, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed "improper methods." *Duggin*, 234 Va. at 226-27, 360 S.E.2d at 836. (citations omitted).[7]

---

[5] Cox is not a party to Lunsford's contract with MAG, and the Court has serious doubts whether he has standing to complain about its termination. Although Cox claims to be a third-party beneficiary of the MAG/Lunsford contract, the complaint alleges no facts supporting this theory of liability.

[6] The complaint is not clear whether Cox had a contract with MAG, or whether he worked for Lunsford pursuant to Lunsford's appointment. In the latter case, his contract would be with Lunsford, not MAG. The parties, however, treat the case as if Cox had a contract directly with MAG to sell its insurance, and the Court will assume that such a contract existed.

[7] The plaintiff does not dispute that the contracts at issue are at-will, so the Court will find both the Lunsford producer agreement and the appointment were at-will contracts. (Dk. No. 14 at 19; Dk. No. 15 at 3).

a. Claims against RCMD

With respect to both the MAG/Lunsford contract and the Cox appointment contract, the plaintiff fails to allege that RCMD committed any intentional act designed to interfere with the contract between MAG and Lunsford. *See Alliance Tech. Grp., LLC v. Achieve 1, LLC*, No. 3:12CV701-HEH, 2013 WL 143500, at *7 (E.D. Va. Jan. 11, 2013). Both the amended complaint and Cox's briefs are long on conclusions, but short on factual statements. While knowledge and intent may be alleged generally, the plaintiff must still provide factual allegations giving rise to a reasonable inference of knowledge or intent. *See Iqbal*, 556 U.S. at 686. The Court has scoured the plaintiff's brief for argument about facts supporting the claim. The following is what the plaintiff calls "each and every 'particular' of Plaintiff's tortious interference" claim against RCMD:

> RCMD knew about the MAG appointment and Cox's rights and business expectancies as a result of the appointment, including MAG's obligation to honor [change of agent of record letters]. RCMD knew Cox had obtained the business of Pratt through [a change of agent of record] and that Cox was entitled to a commission as a result. . . .

(Dk. No. 13, at 19.) Then, Cox says that he thinks MAG told RCMD about additional potential changes of agent. From these meager facts, the plaintiff launches into a series of conclusions: that RCMD caused MAG to refuse to honor change of agent letters, that RCMD caused MAG to cancel Lunsford's appointment, that RCMD conspired with MAG, that RCMD caused MAG to engage in unethical and sharp practices, and that RCMD aided and abetted MAG in its unfair deeds.

Cox recognizes the paucity of his factual allegations. To get around this problem, he argues that "discovery is essential" to show who was involved in the inducement to breach and what they did. (Dk. No. 13, at 20.) Discovery does not serve as a tool to get basic facts to state

a claim; otherwise, anyone who thinks he has suffered harm can file suit, load up the other side with discovery, and hope something shows up. *Twombly*, 550 U.S. 544, 559-60.[8]

The facts that RCMD knew about Cox's reappearance as a MAG agent, knew that he had customers ready to change agents, and knew that RCMD did not like losing customers simply do not lead to the conclusion that RCMD (or, for that matter, MAG) engaged in a nefarious plot. The suggestion that a multi-state insurance company got rid of a successful salesman because of a few changes of agent is simply not plausible.

### b. Claims against MAG

Just as the intentional interference with contract claim fails against RCMD, it also fails against MAG. Cox's factual allegations simply do not lead to the many inferences the plaintiff asks the Court to draw. The claim against MAG also fails for an additional reason. MAG cannot be liable because a party cannot interfere with his own contract.[9] Rather, a tortious interference claim requires the existence of three actors—the two parties to the contract and a third-party who interferes with, or induces one of the parties to breach, that contract. *See Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 448 (E.D. Va. 2002) (noting "it is axiomatic that a party cannot

---

[8] "While a complaint need not forecast evidence or prove the elements of a claim, it must allege sufficient facts to establish those elements. A complaint deficient in this regard will not unlock the doors of discovery and is properly dismissed pursuant to a Rule 12(b)(6) motion. *Reid v. Newton*, No. 3:13-CV-572, 2014 WL 1493569, at *6 (E.D. Va. Apr. 14, 2014) (citations omitted); *Chennault v. Mitchell*, 923 F. Supp. 2d 765, 774 (E.D. Va. 2013) ("Plaintiff's argument that formal discovery would allow her the opportunity to develop facts is also unpersuasive . . . The complaint does not state a plausible claim for relief and thus does not entitle plaintiff to the expensive and burdensome process of formal discovery.").

[9] A person cannot intentionally interfere with his own contract, but a party to contract can be held liable for conspiring to breach his own contract, provided that party unites with a third person in effecting the breach of the contract. *Fox v. Deese*, 234 Va. 412, 427, 362 S.E.2d 699, 708 (1987). This rule is inapplicable here. Cox does not allege a breach of contract, he alleges conspiracy to tortiously interfere and tortious interference with a contract or with a business expectancy. Further, a conspiracy to breach a contract that does not involve an independent duty arising outside of the contract does not state a claim for civil conspiracy. *Station #2, LLC v. Lynch*, 280 Va. 166, 174-75, 695 S.E.2d 537, 541 (2010).

interfere with his own contract"); *Fox*, 234 Va. at 427, 362 S.E.2d at 708.[10] Accordingly, any claim against MAG for tortious interference with contract must fail.

### 2. Tortious interference with business expectancies

#### a. Claims against RCMD

In order to state a claim for tortious interference with a business expectancy, a plaintiff must allege: (1) the existence of a valid contractual relationship or business expectancy, with a probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damages. *Smithfield Ham & Prods. Co. v. Portion Pac. Inc.*, 905 F. Supp. 346, 439 (E.D. Va. 1995); *Duggin v. Adams*, 234 Va. 221, 360 S.E.2d 832, 836 (Va. 1987)). A plaintiff must also allege the added element that the defendant employed "improper methods in causing the alleged interference." *East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 735 (E.D. Va. 2012).[11] Again, the claim against RCMD fails because the plaintiff has not adequately alleged any wrongful conduct, but it also fails for another reason.

---

[10] The exception to this rule applies when a plaintiff can establish that the agent of a party to the contract was acting outside the scope of his employment in tortiously interfering with the contract. *Wuchenich v. Shenandoah Mem'l Hosp.*, 215 F.3d 1324, 2000 WL 665633, at *17 (4th Cir. 2000); *Fox*, 234 Va. at 428, 362 S.E.2d at 708. In this case, MAG acted independently and the amended complaint lacks any indication an agent of MAG acted independently to tortiously interfere with the contracts at issue. *See Levine v. McLeskey*, 881 F. Supp. 1030, 1055-56 (E.D. Va. 1995); *Flinders v. Datasec Corp.*, 742 F. Supp. 929, 935 (E.D. Va. 1990); *Haigh v. Matsushita Elec. Corp. of Am.*, 676 F. Supp. 1332, 1349 (E.D. Va. 1987) (*citing Welch v. Kennedy Piggly Wiggly Stores, Inc.*, 63 B.R. 888, 894 (W.D. Va. 1986)).

[11] Methods that have been recognized as "improper" include: (1) "means that are illegal or independently tortious," (2) "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship," (3) means that "violate an established standard of a trade or profession," (4) "[s]harp dealing, overreaching, unfair competition," or "other competitive conduct below the behavior of fair men similarly situated." *Duggin*, 234 Va. at 226-27, 360 S.E.2d at 836-37 (internal quotations and citations omitted).

Cox asserts he had a valid business expectancy in his "right to obtain business by AOR pursuant to Virginia law."[12] This included ten unnamed prospective customers and at most three specific AOR letters. Virginia courts have held a general expectancy to "stay in business" is not enough. *Masco Contractor Services East, Inc. v. Beals*, 279 F. Supp. 2d 699, 710 (E.D. Va. 2003) (citing *Levine v. McLeskey*, 881 F. Supp. 1030, 1057 (E.D. Va. 2005)) (finding that under Virginia law, "the expectancy of remaining in business is too general to support a tortious interference claim."). Instead, a particular expectancy must exist and it must be reasonably certain that absent the defendant's misconduct, the plaintiff would have realized the expectancy. *N.Y. Carpet World, Inc. v. Grant*, 912 F.2d 463, 1990 WL 123871, at *2 (4th Cir. 1990); *see Masco*, 279 F. Supp. 2d at 710.

Cox points to unnamed former and current clients as business expectancies, but fails to offer facts demonstrating a reasonably certain business expectancy with each customer or that

---

[12] Virginia Code § 38.2-1812 provides the steps for a policyholder to change its agent of record. Cox relies on this section to assert that RCMD demanded MAG violate the law by failing to accept agent of record requests. The statute in pertinent part requires:

> [e]ach insurer shall accept and honor each request by a policyholder for a change of insurance agent of record, which change shall be effective on the date of the next renewal of the policy, unless the policyholder withdraws the request in writing, provided that the change of insurance agent of record shall not be effective unless the proposed new insurance agent of record is a duly appointed agent of the insurer. Prior to the effective date of the change, the insurer shall provide written notice of the change to the current insurance agent of record . . . .

Va. Code Ann. § 38.2-1812(D). It is worth noting Virginia does not allow a private cause of action to sue under state insurance laws. *See Estate of Spinner v. Anthem Health Plans of Va.*, 589 F. Supp. 2d 738, 750 (W.D. Va. 2008) *aff'd* 388 F. App'x 275 (4th Cir. 2010) (noting Virginia insurance laws do not create a private cause of action) (citing *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 674 (4th Cir. 1986) (noting federal courts must be wary of reading private rights of action into state statutes where state courts and legislatures have not done so)); *Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665 (E.D. Va. 2005) (finding under Virginia law, there was no statutorily protected right to have insurance license and conduct insurance business, and thus insurance company's termination of agent did not fall within public policy exception to at-will employment).

such expectancies were lost because of RCMD. *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 830 (E.D. Va. 2011) (dismissing a tortious interference claim where plaintiff employer alleged that a former employee interfered with its relationship with a specific customer, but failed to allege facts demonstrating reasonably certain business opportunities with that customer). Cox alleges no facts establishing any reasonably certain expectancies lost as a result of RCMD's conduct. *See Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 705 (E.D. Va. 2004) (finding "a general expectancy that consumers will purchase insurance from the GEICO Website, which is all that plaintiff has alleged, does not suffice"). Cox's hope that ten unnamed former or current customers would choose him cannot rise above a speculative level.[13]

With respect to Cox's claim of interference with three actual change of agent letters, these claims must also fail. First, MAG honored the Pratt request to change agents. Consequently, it may not serve as the basis for a tortious interference claim. And ultimately, Cox was not authorized to sell MAG insurance at the time the two unsigned AOR letters would have gone into effect (the policy renewal date). Thus, any damage occurred because of MAG's lawful termination of its contracts. Consequently, Cox's tortious interference claim against RCMD must fail.

---

[13] *See also Masco*, 279 F. Supp. 2d at 699 (noting a cause of action provides a legal remedy for interference with a "particular party's specific, existing contract or business expectancy"); *Joyce v. Lincoln Nat. Life Ins. Co.*, 845 F. Supp. 353, 355 (E.D. Va. 1993), *aff'd* 32 F.3d 562 (4th Cir. 1994) (granting summary judgment where the plaintiff could not establish the damages element of her claim because her "claim depends on proof not of Joyce's earning capacity in general but on the likelihood that a single, specific relationship between [plaintiff] and [potential client] would have been established and would have continued—a matter of pure conjecture").

b. Claims against MAG[14]

As discussed above, Cox fails to allege a valid business expectancy and consequently his claim of tortious interference must be dismissed. With respect to a claim against MAG, Virginia case law also requires "a competitive relationship between the party interfered with and the interferor," as a separate element to state a prima facie case of tortious interference with a business expectancy. *17th Street Assoc. v. Market Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 600 (E.D. Va. 2006).[15] Cox does not allege a competitive relationship, and it is apparent that Cox, as an appointed insurance agent for MAG, acted for MAG's benefit rather than in competition with the company. For these reasons, the Court DISMISSES Cox's tortious interference claim against both MAG and RCMD.

B. Civil Conspiracy

*1. Cox's claim for statutory conspiracy fails*

Cox alleges MAG and RCMD conspired to injure him in his business and property, in violation of Virginia Code § 18.2-499. This code section protects people in their businesses, not in their employment. *Andrews v. Ring*, 266 Va. 311, 319 (2003) (noting injury to personal reputation and interest in employment are clearly excluded from the scope of the statute's coverage).[16] Although Cox labels his injury an injury to his "business and property," the

---

[14] It is understandable the plaintiff is distressed because of the loss of his insurance appointment. Yet, this loss does not create liability for tortious interference, when the defendants acted within their rights in determining to terminate the insurance appointment. *See Glass*, 228 Va. at 54, 321 S.E.2d at 78 ("Their actions being lawful, whether they acted in a spirit of actual malice, hostility, or ill will toward plaintiffs is of no legal consequence.").

[15] *Adeptech Systems, Inc. v. Federal Home Loan Mortg. Corp.*, 2011 WL 6820184, at *17 (E.D. Va. 2011); *Rappahannock Pistol*, 262 Va. 5, 5, 546 S.E.2d 440, 443 (2001).

[16] *See Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir. 1985) (noting an action under § 18.2-499 exists "only when malicious conduct is directed at one's business, not one's person."); *Jaggars v. Sandy Spring Bank*, 2014 WL 2882003, at *2 n.1 (W.D. Va. June 25, 2014) (noting "nearly all of the cases addressing the business/personal distinction find that employment interests, including

amended complaint makes clear his claim involves only his appointment and employment as an insurance agent.[17] Cox's ability to bring in business for his employer Lunsford or for MAG does not create a business interest.[18] Accordingly, the Court DISMISSES Cox's claim of statutory conspiracy.

### 2. Cox fails to allege common law conspiracy because he fails to allege an underlying tort

In Virginia, the elements of a common law civil conspiracy are: "(i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007); *see Glass v. Glass*, 228 Va. 39, 47, 321 S.E.2d 69, 69 (1984). A claim for civil conspiracy "requires proof that the underlying tort was committed." *Almy v. Grisham*, 273 Va. 68, 639 S.E.2d 182, 189 (2007). Where "there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong." *Beasley v. FV-I, Inc.*, 2013 WL 1192018, at *4 (E.D. Va. Mar. 21, 2013).

---

damage to one's professional reputation, are personal interests rather than business interests."); *see also Campbell v. Bd. of Supervisors*, 553 F. Supp. 644, 645 (E.D. Va. 1982) (noting that Section 18.2-499 "is aimed at conduct which injures a 'business'"); *Moore v. Allied Chem. Corp.*, 480 F. Supp. 364, 374 (E.D. Va. 1979) ("The statute does not restrict its coverage to corporations; by speaking of injury to 'another in his reputation, trade, business or profession,' Section 18.2–499 also protects individuals who own and operate a business.").

[17] *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012) (an individual does not have a business interest if "he neither owned a company, did business as a separate organization, nor had a separate tax identification number for his contractor status"); *Jordan v. Hudson*, 690 F. Supp. 502 (E.D. Va. 1988) (dismissing a claim the defendants injured the plaintiff in his "reputation, trade, business and profession" as a United States postmaster because Va. Code. § 18.2-499 addresses injuries to one's business, not to one's employment interests).

[18] *Luckett v. Jennings*, 246 Va. 303, 435 S.E.2d 400 (1993) (finding a real estate developer, also the president and the construction manager of a company, specifically alleged business interest as "a real estate developer, including the specific types of activities he undertakes in the conduct of his business," and "specifically alleges injury to his business . . . setting forth itemized damages, which he claims represent the business injury he suffered.").

As discussed above, Cox fails to allege tortious interference and consequently, his claim for common law conspiracy cannot survive. *See William v. AES Corp.*, No. 1:14CV343 JCC/TRJ, 2014 WL 2896012, at *17 (E.D. Va. June 26, 2014) (citing *Beasley*, 2013 WL 1192018, at *4) (finding "where a plaintiff has no actionable claim for the underlying alleged wrong, an action for conspiracy based on that wrong cannot lie.").[19] Accordingly, there can be no action for civil conspiracy based upon that underlying tort.

Cox's vague contentions that "sometime between the first week in February and some time before May 9, 2013, MAG and RCMD combined, associated, agreed or acted in concert together for the purposes of willfully and maliciously injuring Cox in his business and property, for the purpose of tortiously interfering with Cox's appointment with MAG Mutual, and for the purposes of tortiously interfering with Cox's legitimate business expectancies" is insufficient to state a claim for conspiracy to tortiously interfere. (Dk. No. 1-14, at ¶ 69.) The amended complaint neither identifies nor details any sort of agreement between the defendants, nor does it describe the manner in which the defendants colluded. *See Beasley*, 2013 WL 1192018, at *5. The statements involving MAG's decision not to honor agent of record letters and its instruction not to send such letters simply offer too little to infer a conspiracy between RCMD and MAG.[20]

---

[19] *See also Beck v. Prupis*, 529 U.S. 494, 501 (2000); *McCarthy v. Kleindienst*, 741 F.2d 1406, 1413 n.7 (D.C. Cir. 1984) ("[C]onspiracy allegations . . . do not set forth an independent cause of action; instead, such allegations are sustainable only after an underlying tort claim has been established."); *Werth v. Fire Companies' Adjustment Bureau*, 160 Va. 845, 855, 171 S.E. 255, 259 (1933) ("To give action there must not only be conspiracy, but conspiracy to do a wrongful act.").

[20] Courts have held that the plaintiff must at least allege "some details concerning the time and place at which the conspiracy came into being." *Firestone*, 485 F. Supp. 2d at 703-04. The simple statement that "Cox was informed that the RCMD attendees were livid to learn that Cox now had a MAG appointment" does not support any assertion that MAG and RCMD then colluded to injure Cox. Cox fails to allege a meeting of the minds and an agreement sufficient to support his conspiracy claim. *See U.S. ex rel. Godfrey v. Kellogg, Brown & Root, Inc.*, No.

## III. <u>Conclusion</u>

For the reasons set forth above, the Court GRANTS the defendants' motions to dismiss and DISMISSES the plaintiff's suit.

The Court shall enter an appropriate order.

Date: 4/9/15

Richmond, VA

/s/ _____
John A. Gibney, Jr.
United States District Judge

---

1:05CV1418 GBL, 2008 WL 9878351, at *7 (E.D. Va. Mar. 13, 2008), *aff'd sub nom. U.S. ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x 407 (4th Cir. 2010).